UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 15-10043 |
| ) | |
| CONSTANCE GUSTAFSON ) | |
| ) | |
| Defendant. ) | |

# ORDER AND OPINION

This Matter is now before the Court on Defendant Constance Gustafson's Motion [8] to Dismiss Indictment. For the reasons set forth below, Defendant's Motion is Denied.

**Background**

Defendant, Constance Gustafson, was indicted for Mail Fraud in violation of 18 U.S.C. § 1341, Misapplication in Connection with Health Care in violation of 18 U.S.C. § 669, and Theft in Connection with Health Care in violation of 18 U.S.C. § 669. The indictment alleges that while Gustafson was employed in a dental office in Hopedale, Illinois, she encouraged patients to pay their bill in cash by offering discounts. Gustafson provided the patients with receipts for the payments but did not record the payments in the computer system or patient ledgers. To conceal her theft, Gustafson allegedly applied insurance payments received for insured patients toward the patient accounts that paid in cash. She then deleted the dental procedures from the patient records or made entries on the ledgers falsely reflecting an insurance write-off for the balance owed. Defendant's alleged scheme defrauded the dental practice of approximately $190,000. The indictment alleges that the Defendant received the insurance company checks through United States Post Office deliveries to the dental practice.

1

**Standard of Review**

An indictment is sufficient if it: (1) states the elements of the crime charged, (2) adequately informs the defendant of the nature of the charges, and (3) allows the defendant to plead the judgment as a bar to future prosecutions. *United States v. Singleton*, 588 F.3d 497, 499 (7th Cir. 2009); Fed. R. Crim. Pro. 7. "Generally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished. *United States v. Torres*, 191 F.3d 799, 805 (7th Cir. 1999) quoting *United States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981).

**Analysis**

Gustafson moves to dismiss the indictment for failure to establish any violation of the mail fraud or health care crime statutes. The mail fraud statute provides:

> <u>Whoever</u>, having <u>devised</u> or intending to devise <u>any scheme</u> or artifice <u>to defraud</u>, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises. . . <u>for the purpose of executing such scheme</u> or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or <u>takes</u> or <u>receives</u> therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing . . . [is guilty of mail fraud]

18 U.S.C. § 1341 (emphasis added)

The health care crime statute provides:

> **(a)** Whoever knowingly and willfully embezzles, steals, or otherwise without authority converts to the use of any person other than the rightful owner, or intentionally misapplies any of the moneys, funds, securities, premiums, credits, property, or other assets of a health care benefit program, shall be fined under this title or imprisoned not more than 10 years, or both; but if the value of such

> property does not exceed the sum of $100 the defendant shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 669

> **(b)** As used in this title, the term "health care benefit program" means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

18 U.S.C. § 24

**1) Mail Fraud**

Gustafson argues that the indictment fails to establish a mail fraud violation because the mailings from the insurance companies were not part of the scheme to defraud described in the indictment. Rather, Gustafson argues, the checks from the insurance companies were mailed for the legitimate purpose of reimbursing the dentist for services provided, and the mere use of material that was once sent through the mail is not within the reach of the mail fraud statute.

The offense of mail fraud is limited to "instances in which the use of the mails is a part of the execution of the fraud." *Kann v. United States*, 323 U.S. 88, 96 (1944). To be part of the execution of the fraud, the mailing must be incident to an essential part of the scheme, or a step in the plot. *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989). In order to "show that a mailing is incident to an essential part of the scheme, the government must demonstrate that completion of the alleged scheme depended in some way on the information or documents that passed through the mail." *United States v. Ingles*, 445 F.3d 830, 835 (5th Cir. 2006). The Seventh Circuit indicated that a fraudulent scheme "may consist in failing to supply the honest and diligent services that one's employer is entitled to receive. . . . Using the mails in the course of the scheme—even as an expected by-product of the scheme—completes the offense." *United States v. Kwiat*, 817 F.2d 440, 443 (7th Cir. 1987). Thus, "the defendant himself need not

personally cause the mailing or use of the wire; it is enough that the use of mail or wire will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *United States v. Turner*, 551 F.3d 657, 666 (7th Cir. 2008). The mailing or use of the mails "need not itself contain false or fraudulent material; a 'routine or innocent' mailing or use of the wire can supply this element of the offense, so long as the use of the mail or wire is part of the execution of the scheme. *Turner*, 551 F.3d at 666; *Schmuck*, 489 U.S. at 714-15.

Gustafson argues that the indictment does not allege that she placed something in the mail or caused someone else to do so, as is common in mail fraud prosecutions, but rather employs the rarely used "takes or receives clause." Gustafson claims that taking the insurance companies' checks from the mail played no part in alleged fraud scheme, and the mere use of material that was once sent through the mail is not within the reach of the mail fraud statute.

In *United States v. Brocksmith*, an insurance agent used his clients' premium checks to pay for his personal expenses. 991 F.2d 1363 (7th Cir. 1993). To accomplish the fraud, he told his clients to endorse their checks to him rather than the insurance company, and to mail them to his office. He delayed purchasing the policies by sending customers post cards to set up meetings to buy more time, and he appropriated the funds for his own use or to purchase a policy for a previous customer. *Id.* at 1364-65. After holding that the mailing of the fraudulently obtained checks was "not only 'incidental' to the defendant's scheme, it *was* his scheme," the Seventh Circuit reasoned that the mailing of the post cards also violated the mail fraud statute because "the other mailings allayed customers' suspicions and covered up the defendant's fraudulent activity." *Id.* at 1367-68. ("Use of the mails to lull victims into a false sense of security, we have

4

held, violates the mail fraud statute, *even if it occurs after the money has been fraudulently obtained*.") (emphasis added).

Here, the indictment sufficiently alleges that Gustafson committed the offense of mail fraud. Gustafson's alleged use of the insurance checks to conceal her theft from her employer was "incident to an essential part of the scheme, or a step in the plot." *Schmuck v. United States*, 489 U.S. at 710-11. In other words, if Gustafson had not used the insurance checks to reimburse the accounts of patients who paid in cash, her scheme would have been quickly exposed. Similar to *Brocksmith*, Gustafson used the mails, i.e., the insurance checks, to cover up her fraudulent activity—pocketing patients' cash payments. Moreover, the fact that Gustafson did not physically place the insurance checks in the mail is immaterial. *Turner*, 551 F.3d at 666 ("[t]he defendant himself need not personally cause the mailing or use of the wire; it is enough that the use of mail or wire will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended."). The insurance checks certainly "followed in the ordinary course of business," and the use of the checks to cover up the alleged theft was essential to the scheme to defraud. See *Turner*, 551 F.3d at 666; *Kwiat*, 817 F.2d at 443.Thus, the indictment sufficiently alleges a mail fraud violation.

**2) Misapplication and Theft in Connection with Health Care**

Gustafson also argues that the indictment fails to allege a misapplication in connection with health care offense because 'misapplication,' as used in the *bank* fraud statute, requires an intent to deceive, and the indictment does not allege that she defrauded or intended to defraud the insurance companies, but rather the dental practice. Similarly, Gustafson argues that the dental practice is not a "health care benefit program" as defined by the statute.

5

Despite Gustafson's arguments, both the unambiguous language of the statute and case law hold otherwise. The operative language of the statute defines "healthcare benefit program" as including "any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract."18 U.S.C. § 24(b). A dental practice that accepts insurance payments for patients is clearly an entity that provides a medical service. *United States v. Whited* lends support to this conclusion. 311 F.3d 259 (3d Cir. 2002). In that case, the Third Circuit held that a chiropractic center that accepted Blue Cross insurance payments fell within the meaning of a health care benefit program under Section 24(b). *Id*. at 264 ("Section 24(b) explicitly 'includes' precisely those types of local medical service providers."). "The statute thus makes clear Congress's intent to criminalize theft or embezzlement under 18 U.S.C. § 669 when the victim of that theft or embezzlement is a medical services provider—such as the Center—being compensated pursuant to a public or private plan, such as Blue Cross." *Id*. Thus, the indictment sufficiently alleged facts which, if proven, would constitute a violation of the law charged.

## CONCLUSION

For the reasons stated above, Defendant Gustafson's Motion [8] to Dismiss Indictment is Denied.

Entered this 28th day of January, 2016

s/ James E. Shadid
James E. Shadid
Chief United States District Judge
